# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| The Outdoorsmans Attic, LLC,<br><br>    Petitioner,<br><br>    vs.<br><br>Paul Brown, Director of Industry Operations for the ATF's Denver Field Division,<br><br>    Respondent. | Case No.: 1:25-CV-00112<br><br>**PETITION FOR DE NOVO REVIEW OF THE REVOCATION OF A FEDERAL FIREARMS LICENSE PURSUANT TO 18 U.S.C. § 923(f)(3)** |

1. This Petition is brought by The Outdoorsmans Attic, LLC ("Outdoorsmans"), seeking a de novo review of a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on November 4, 2024 ("Final Notice of Revocation") revoking its federal firearms license ("FFL").

## PARTIES

2. Petitioner Outdoorsmans held a type 01 (Dealer in Firearms Other Than Destructive Devices) FFL, No. 5-84-005-01-6M-03814, for its premises located at 2560 West Hampden Avenue, Sheridan, CO 80110.

3. Respondent, Paul Brown, is the Director of Industry Operations ("DIO") for the ATF's Denver Field Division, located at 950 17th Street, Suite 1800, Denver, CO 80202.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 932(f)(3), which authorizes de novo review of the Final Notice of Revocation.

5. Outdoorsmans has exhausted all of its administrative remedies pursuant to 18 U.S.C. § 932(f)(2) and 27 C.F.R. § 478.74, et al.

## BACKGROUND

6.   Outdoorsmans continuously held a type 01 FFL from 2011 until it was revoked.

7.   Outdoorsmans is a small, family run business that sells used hunting, fishing and camping gear on consignment. Outdoorsman also sells firearms at retail.

8.   Outdoorsmans regularly transfers firearms to persons who win them in raffles being conducted by entities that do not have FFLs.

9.   The firearms to be raffled would be transferred to Outdoorsmans.

10. After a person wins a firearm in a raffle, they would come to Outdoorsmans, which would then transfer the firearm to them on behalf of the entity conducting the raffle, by having the person complete a Form 4473, reviewing a copy of their valid government issued identification document, and conducting a background check on them.

11. Outdoorsmans transfers the firearms to raffle winners in the same manner as it transfers firearms to customers who purchase them online from firearms dealers in other states, and in the same manner in which it facilitates the transfer of firearms between private parties.

12. Outdoorsmans has transferred more than a hundred firearms to persons who have won raffles conducted by various organizations, including American Heroes in Action, Ducks Unlimited, and Pheasants Forever.

### Firearm Raffles Conducted by Leonel Castillo

13. In approximately January 2023, Leonel Castillo informed Outdoorsmans that he conducts online raffles and asked whether it would be willing to facilitate the transfer of firearms that he raffled to the winners of the raffles.

2

14. Outdoorsmans agreed to transfer firearms to the winners of raffles conducted by Mr. Castillo in the same manner as it transferred firearms to winners of raffles conducted by the organizations for which it was already providing that service.

15. Mr. Castillo would purchase certain firearms from Outdoorsmans to be raffled.

16. Mr. Castillo did not take possession of those firearms and they remained in the possession of Outdoorsmans until it transferred them to the winners of the raffles.

17. Two individuals, Carlos Anaya and Jorge Miranda, also brought firearms to Outdoorsmans to be included in the raffles conducted by Mr. Castillo.

18. Outdoorsmans never transferred any firearms to Mr. Castillo.

19. Outdoorsmans never received any firearms from Mr. Castillo.

20. All firearms received from Mr. Anaya for purposes of being raffled by Mr. Castillo were logged into Outdoorsmans' acquisition and disposition ("A&D") records as having been received from Mr. Anaya.

21. All firearms received from Mr. Miranda for purposes of being raffled by Mr. Castillo were logged into Outdoorsmans' A&D records as having been received from Mr. Miranda.

22. Outdoorsmans always checks the identification of the persons from whom it acquires firearms to ensure that their information is correctly entered in the A&D records.

**ATF Report of Violations and Notice of Revocation**

23. The ATF conducted its first compliance inspection of Outdoorsmans in 2018.

24. The 2018 compliance inspection resulted in a report of violations that cited Outdoorsmans with a total of four violations.

25. Due to the small number of minor violations in the 2018 compliance inspection, the report of violations was closed without any further administrative action.

26.  The ATF conducted its second compliance inspection of Outdoorsman in 2024.

27. At the conclusion of the 2024 compliance inspection, the ATF issued a report of violations dated March 7, 2024.

28.  This March 7, 2024 report of violations alleged four violations.

29. Upon information and belief, based on small number of minor violations in the 2024 compliance inspection, the March 7, 2024 report of violations would also have been closed without any further administrative action.

30. The ATF issued an amended report of violations dated May 24, 2024.

31. The May 24, 2024 amended report of violations added fifteen new violations for alleged falsification of A&D records, and one violation for allegedly aiding and abetting Mr. Castillo to engage in the business of dealing in firearms without an FFL.

32. Based entirely on the new violations alleged in the May 24, 2024 amended report of violations, Respondent issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine on July 1, 2024 ("Notice to Revoke").

33. None of the original four violations raised in the March 7, 2024 report of violations was raised in the Notice to Revoke.

34. The Notice to Revoke raised two grounds.  First, that Outdoorsmans willfully made a false statement or representation with respect to information required by the Gun Control Act ("GCA"), in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c)." Second that Outdoorsman

4

"willfully aided and abetted a non-licensee, Leonel Castillo, to engage in the business in dealing firearms without a Federal firearms licensed in violation of 18 U.S.C. §§ 2 and 922(a)(1)(A)."

35. Relative to the first ground, the Notice to Revoke alleged that there were false statements in the A&D records related to fifteen firearms, five or which had been acquired from Mr. Anaya, and ten of which had been acquired from Mr. Miranda.

36. No basis for the alleged falsification was provided, only that Outdoorsmans was being cited with making a false statement "[u]tilizing information disclosed in other ATF investigation."

37. Relative to the second ground, no facts were provided regarding how Outdoorsmans had allegedly aided and abetted Mr. Castillo to engage in the business of dealing firearms without a license.

38. Outdoorsmans timely requested a hearing in response to the Notice to Revoke.

39. In advance of the hearing, the ATF provided eleven documentary exhibits.

40. None of the ATF's exhibits supported the allegations raised in the Notice to Revoke.

41. A revocation hearing was held on September 25, 2024, at the ATF's Denver Field Division Office in Denver, Colorado.

### September 25, 2024 Revocation Hearing

42. Although Respondent had issued the Notice to Revoke, he also served as the hearing officer for the September 25, 2024 revocation hearing.

43. IOI Greg Paa and SA Jason Clemens were the ATF's only witnesses during the September 25, 2024 revocation hearing.

44. Mr. Paddock was Outdoorsmans' sole witness during the September 25, 2024 revocation hearing.

5

45. During the September 25, 2024 revocation hearing, SA Clemmons testified that he conducted an investigation of Mr. Castillo for dealing in firearms without an FFL and being a convicted felon in possession of a firearm.

46. SA Clemmons testified that he spoke with Messrs. Anaya and Miranda and they claimed that they never brought any of the fifteen firearms to Outdoorsmans that are listed in its A&D records as having been received from them.

47. SA Clemmons further testified that Mr. Castillo told him that he had actually been the one who brought the fifteen firearms listed in the Notice to Revoke as having been acquired from Messrs. Anaya or Miranda to Outdoorsmans.

48. Mr. Castillo was indicted and charged with dealing in firearms without an FFL and being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(a)(1)(A) and (g)(1) in the case of *USA v. Castillo*, No. 1:23-cr-00326-NYW-1, in this Court.

49. At the time of the September 25, 2024 revocation hearing, Mr. Castillo had not yet been sentenced and, upon information and belief, he provided false information to SA Clemmons regarding Outdoorsmans.

50. Mr. Anaya was indicted and charged with unlawful disposition of a firearm and false statement during purchase of a firearm in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(1)(A) in the case of *USA v. Anaya*, No. 1:24-cr-00104-PAB-1, in this Court.

51. At the time of the September 25, 2024 revocation hearing, Mr. Anaya had not yet been sentenced and, upon information and belief, he provided false information to SA Clemmons regarding Outdoorsmans.

52. Upon information and belief, Mr. Miranda also provided false information to SA Clemmons regarding Outdoorsmans.

53. Mr. Paddock testified that Outdoorsmans Attic did not receive any of the fifteen firearms at issue from Mr. Castillo, and that they would have been received from either Messrs. Anaya or Miranda, as identified in Outdoorsmans' A&D records.

54. Mr. Paddock testified that he was not aware that Mr. Castillo was required to have an FFL to auction firearms and thought that it was legal for him to do so in the same manner as the other entities that raffled firearms that Outdoorsmans transferred to the winners, including American Heroes in Action, Ducks Unlimited, and Pheasants Forever.

55. Mr. Paddock testified that he was not aware that it was legal for American Heroes in Action, Ducks Unlimited, and Pheasants Forever to conduct the firearm raffles because they were non-profit charitable organizations, but that it was not legal for Mr. Castillo to do so because he was a private individual conducting raffles for profit.

### Final Notice of Revocation

56. On November 4, 2024, Respondent issued the Final Notice of Revocation that is the subject of this petition for de novo review.

57. The Final Notice of Revocation concluded that Outdoorsmans had made false statements in its A&D records indicating that fifteen firearms had been acquired from Messrs. Anaya and Miranda, when they had actually been acquired from Mr. Castillo. The Final Notice of Revocation also concluded that Outdoorsmans had aided and abetted Mr. Castillo in unlawfully dealing in firearms without a license.

7

58. Pursuant to 28 U.S.C. § 923(e), the ATF is only authorized to revoke an FFL based on a willful violation of the GCA.

59. The limitation on the ATF's authority to revoke an FFL was added to the GCA by the Firearm Owners Protection Act, 100 Stat. 449, Pub. Law 99-308, ("FOPA") based on the concern of Congress that the ATF had been improperly revoking FFLs based on unintentional violations of the GCA.

60. The FOPA and the GCA do not define the term "willful" as it relates to a violation of the GCA.

61. An FFL holder's violation of the GCA only rises to the required level of a willful violation when it either knowingly fails to follow the requirements of the law, or was plainly indifferent toward known legal obligations. *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012).

62. Outdoorsman did not have the ability to obtain any discovery with which to defend itself against the allegations in the Notice to Revoke, or to compel any witnesses to testify on its behalf during the revocation hearing.

63. Respondent's conclusion that Outdoorsmans had willfully violated 27 C.F.R. § 478.128(c) on fifteen occasions by making false entries in its A&D records that firearms acquired from Mr. Castillo had been acquired from Mssrs. Anaya or Miranda was based entirely on hearsay testimony from SA Clemmons.

64. Respondent disregarded the testimony of Mr. Paddock that the fifteen firearms at issue had been acquired directly from Messrs. Anaya or Miranda.

65. Pursuant to Rule 802 of the Federal Rules of Evidence hearsay is not admissible unless authorized by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.

66. None of the exceptions to Rule 802's prohibition of hearsay apply to SA Clemens' testimony.

67. Respondent relied entirely on inadmissible evidence to support his conclusion that Outdoorsmans had willfully violated 27 C.F.R. § 478.128(c) on fifteen occasions by making false entries in its A&D records.

68. Admissible evidence was presented during the September 25, 2024 revocation hearing that the fifteen firearms at issue were acquired directly from Messrs. Anaya and Miranda.  This evidence consisted of the testimony of Mr. Paddock, the A&D records themselves, receipts for each of the fifteen firearms identifying Messrs. Anaya or Miranda date as the person from whom each firearm was received, including their full (including middle) names, residential addresses, and driver's license numbers and expiration dates, and a photocopy of Mr. Miranda's driver's license.

69. Respondent completely disregarded this admissible testimony and documentary evidence.

70. No testimony or documentary evidence supported the conclusion that Outdoorsmans had willfully aided and abetted Mr. Castillo to engage in the business of dealing firearms without an FFL.

71. The Final Notice of Revocation does not even contain any finding that Outdoorsmans willfully aided and abetted Mr. Castillo to engage in the business of dealing firearms without an FFL, only that it transferred firearms to winners of raffles conducted by Mr. Castillo.

9

72. The Final Notice of Revocation stated that the revocation of Outdoorsmans' FFL was effective fifteen calendar days from receipt.

73. The Final Notice of Revocation was received by counsel for Outdoorsmans on November 14, 2024, making revocation of Outdoorsmans' FFL effective November 29, 2024.

74. Outdoorsmans requested a sixty day extension of the effective date of the revocation of its FFL based on the time provided to file a petition for de novo review.

75. Respondent only agreed to a thirty day extension (until December 29, 2024) of the effective date of Outdoorsmans' FFL and only for purposes of disposing of the firearms that it had in inventory.

76. The lack of the protections afforded to licensees during an FFL revocation hearing is allegedly justified on the basis that a decision revoking an FFL is subject to de novo review in U.S. district court within sixty days of a decision revoking an FFL. *See* 5 U.S.C. § 554(a)(1); 18 U.S.C. § 923(f)(3); ATF Final Rule "Federal Firearms License Proceedings—Hearings," 99 Fed. Reg. at 32233.

77. A licensee's right to due process is violated if it is unable to secure de novo judicial review of a final decision revoking its FFL before the revocation becomes effective and prevents the licensee from continuing its business.

78. Outdoorsmans' FFL was revoked without due process prior to the deadline to seek de novo judicial review.

WHEREFORE, Outdoorsmans respectfully prays that this Honorable Court reverse the Final Notice of Revocation, hold that Respondent was not authorized to revoke Outdoorsmans' FFL

pursuant to 18 U.S.C. § 923(e), order Respondent to reinstate Outdoorsmans' FFL, and grant such

other relief as it deems just and proper.

Dated: January 13, 2025

By:    */s/ Scott C. Allan*
Scott C. Allan
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile:  (914) 285-1213
Email: sallan@renzullilaw.com

Attorneys for Petitioner The Outdoorsmans Attic, LLC