# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00104-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS MANUEL ANAYA,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Albert Buchman, Assistant United States Attorney for the District of Colorado, and the defendant, Carlos Anaya, personally and by counsel, Rodney Loomis, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.   AGREEMENT

### A. Defendant's Agreement:

The defendant agrees to

(1)     plead guilty to Count 2 of the Indictment charging a violation of Unlawful Disposition of a Firearm, 18 U.S.C. § 922(d)(1);

(2)     waive certain appellate and collateral attack rights, as explained in detail below;

(3)     agree not to contest forfeiture as more fully described below.

**EXHIBIT**

12

**COURT EXHIBIT 1**

USA_0272

Case No. 1:25-cv-00112-GPG-CYC    Document 21-5    filed 05/15/25    USDC Colorado
pg 2 of 26
Case No. 1:24-cr-00104-PAB    Document 24    filed 07/24/24    USDC Colorado    pg 2 of 9

## B. Government's Agreement:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to

(1)     recommend a sentence of probation;

(2)     move to dismiss Counts 1, 3, and 4 of the Indictment with prejudice. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment;

(3)     Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The parties understand that this agreement is not binding on the Court. If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. n.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it

USA_0273

Case No. 1:25-cv-00112-GPG-CYC   Document 21-5   filed 05/15/25   USDC Colorado
pg 3 of 26
Case No. 1:24-cr-00104-PAB   Document 24   filed 07/24/24   USDC Colorado   pg 3 of 9

meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute[s] of conviction;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 18; or

(3)    the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the Court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range

USA_0274

Case No. 1:25-cv-00112-GPG-CYC    Document 21-5    filed 05/15/25    USDC Colorado
pg 4 of 26
Case No. 1:24-cr-00104-PAB    Document 24    filed 07/24/24    USDC Colorado    pg 4 of 9

calculated by the Court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to any firearm involved in the commission of the offense.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described

USA_0275

Case No. 1:25-cv-00112-GPG-CYC    Document 21-5    filed 05/15/25    USDC Colorado
pg 5 of 26
Case No. 1:24-cr-00104-PAB    Document 24    filed 07/24/24    USDC Colorado    pg 5 of 9

above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II.    ELEMENTS OF THE OFFENSE

### Count Two:  18 U.S.C. § 922(d)(1)

*First*:    the defendant knowingly disposed of a firearm to another person;

*Second*: at the time of the disposition of the firearm, the other person was in a prohibited category; and

*Third*:    at the time he disposed of the firearm, the defendant knew or had reasonable cause to believe that the other person was in a prohibited category.

## III.    STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 2 of the Indictment is not more than 15 years' imprisonment; not more than $250,000 fine; or both; not more than three years' supervised release; $100 special assessment fee.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those

USA_0276

considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

On December 17, 2022, the defendant completed the required background check and received possession of a Colt model 1911 .45 caliber handgun bearing serial number GV035287 from Westminster Arms, a federal firearms licensee located in the State and District of Colorado at the time. L.C. had previously purchased the firearm online, and the firearm was shipped to Westminster Arms for transfer. Between and including on or about December 17, 2022, and January 6, 2023, the defendant disposed of the firearm to L.C. knowing or having reasonable cause to believe L.C. had been convicted of a crime punishable by imprisonment for a term exceeding a year. The firearm was functional.

*Additional facts*

The parties agree that the following evidence is alleged in law enforcement reports. The parties agree that the defendant does not stipulate to this evidence as facts for purpose of the guidelines calculation under USSG § 1B1.2(c).

On January 26, 2023, the defendant completed the required background check and received possession of a Sig Sauer model P320 9mm caliber handgun bearing serial number FCU337571 from Westminster Arms, a federal firearms licensee located in the State and District of Colorado at the time. L.C. had previously purchased the firearm

USA_0277

online, and the firearm was shipped to Westminster Arms for transfer. Between and including on or about January 26, 2023, and January 27, 2023, the defendant disposed of the firearm to L.C. knowing or having reasonable cause to believe L.C. had been convicted of a crime punishable by imprisonment for a term exceeding a year. The firearm was functional.

The defendant admitted to law enforcement that he acquired "at least five" and "as many as ten firearms" for L.C.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the government is obligated to make the sentencing recommendation as set forth in the Agreement section above, the parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

USA_0278

Case No. 1:25-cv-00112-GPG-CYC    Document 21-5    filed 05/15/25    USDC Colorado
pg 8 of 26
Case No. 1:24-cr-00104-PAB    Document 24    filed 07/24/24    USDC Colorado    pg 8 of 9

a)   Under Section § 2K2.1(a)(7) the base offense level is **12.**

b)   Specific offense characteristics:

   a. There is a **four-level increase** because the offense involved eight to 24 firearms under § 2K2.1(b)(1)(A);

   b. There is a **five-level increase** because the defendant transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearm by an individual intended to use or dispose of the firearms unlawfully under § 2K2.1(b)(5)(A).[1]

c)   There are no victim-related, role-in-offense, obstruction, grouping, and/or multiple-count adjustments.

d)   The adjusted offense level is **21.**

e)   Acceptance of responsibility: The defendant should receive a **three-level** adjustment for acceptance of responsibility under § 3E1.1. The resulting total offense level is **18.**

f)   The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

g)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

h)   The advisory guideline range resulting from these calculations is **27-33 months' imprisonment.** However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **27** months' (bottom of Category I) to **71** months' (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

---

[1]   The government did not apply the in-connection enhancement at § 2K2.1(b)(6)(B) because the § 2K2.1(b)(5)(A) trafficking enhancement is applied for the same conduct and applying both would constitute impermissible double counting. *See United States v. Fugate*, 964 F.3d 580, 582 (6th Cir. 2020); *United States v. Young*, 811 F.3d 592, 604 (2nd Cir. 2016).

USA_0279

i)    Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $10,000 to $95,000, plus applicable interest and penalties.

j)    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term of at least one years, but not more than three years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 7·21·2024

Carlos Manuel Anaya
Defendant

Date: 7 21 24

Rodney Loomis
Attorney for Defendant

Date: 7/24/24

Albert Buchman
Assistant U.S. Attorney

Page 9 of 9

USA_0280

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:24-cr-00104-PAB

UNITED STATE OF AMERICA,

      Plaintiff,

v.

CARLOS MANUEL ANAYA,

      Defendant.

---

## DEFENDANT'S SENTENCING MEMORANDUM

---

## I.  THE GUIDELINE APPLICATION

Defendant's Plea Agreement determined that the Base Offense Level to be 12 for a violation and subsequent guilty plea to section 18 U.S.C. 922(d)(1). The Pre-Sentence Report calculates the Base Level Offense to be 14. Application of USSG section 2K2.1(b)(1)(B), as to a Specific Offense Characteristic increase the offense level by four, and then application of USSG 2K2.1(b)(5) as to a Special Offender Characteristic (trafficking – more than one firearm) increase to level by another four points. Pursuant to the signed Plea Agreement dated July 21, 2024, the Government has determined the Mr. Anaya should received a two-level reduction pursuant to USSG section 3E1.1(a) for acceptance of responsibility. Further, the Government has agreed to move the Court for an addition one-level reduction pursuant for early acceptance of responsibility. (Defendant agreed to plead guilty pursuant to the proposed Plea Agreement as early as mid-June).

1



EXHIBIT

tabbies

13

USA_0281

The Pre-Sentence Probation report calculates the Total Offense Level at 19. The Pre-Sentence Report determined a criminal history Level of II, based upon an eight-year old "shoplifting" municipal ordinance violation, and a State (Colorado) violation for an unclassified traffic misdemeanor, "Driving While Ability Impaired," just four months later in November 2016. The Defendant does not dispute these violations.

## II. DOWNWARD DEPARTURE/VARIANT SENTENCE

Defendant asserts that the Court should, in this instance, vary from the Guideline range based upon the sentencing factors outlined in 18 U.S.C. 3553(a).

1.    Defendant is a devoted and fully involved family man. There can be no debate about that. At his very core, Defendant is a good person. Defendant told ATF agents at the time of his arrest he was "stupid" for doing this. Defendant has been married to Jewel DeHerrera for four years. Ms. DeHerrera already was raising, alone, a young son, now aged eight, when she married Defendant, and Defendant raises and treats that child as his own child. Defendant and Ms. DeHerrera have, since their marriage, welcomed three additional children into their family, ages one, two, and four. Defendant is the sole source of income for this family. This family would be forever disrupted if not completely up-ended if Defendant is ordered to the Bureau of Prisons for all of the plain and obvious reasons. This observation is not intended as a challenge to the Court's greater role in sentencing, i.e., protecting the public from further harm and to affording adequate deterrence, rather, it is offered to show that there are other lives, very young lives, delicately hanging in the balance, and while this is probably true in many case, in this instance the four completely innocent individuals await the outcome with fear and anxiety, but also with a glimmer of hope. This family situation positively falls into the category and rationale and sentencing factor that a sentence to probation takes into account the nature and circumstances of the offense, as well as the Defendant's history and characteristics, as contained in 18 U.S.C. 3553(a)(1).

2

2.    Defendant is a gifted artist, an entrepreneur, and successful business owner. To begin that journey, Mr. Anaya successfully navigated away from the lure and pressure of gang affiliation, very prevalent where and when he was an adolescent and teen-ager. Defendant knew from a very early period in his life, that he wanted much more out of his life. The Defendant left high school one-year early -- with the blessing of his parents -- in order to learn the art of tattooing, he is naturally given to introspective thought.  As it turns out, the Defendant is not a mere tattoo guy, but rather, he has an extraordinary talent and skill in this regard, and he is highly sought out among the hundreds, if not thousands, of tattoo artist in the Denver metro area. His renditions can appear as if they were photographs. Defendant leases a studio in Arvada, Colorado, he is licensed by the State of Colorado, both his business and his property (building) are insured with a legitimate insurance company, and Defendant pays taxes on his earnings. Being highly skilled and rabidly sought out, Defendant earns as much as $15,000.00 per month, on his own, performing tattoo services, while his wife operates as his business's bookkeeper. The Defendant asserts that this Court should view this circumstance -- the Defendant engaging in self-help -- positively in relationship to the factor addressing whether or not there is a need for additional training. 18 U.S.C. 3553(a)(2)(d).  Mr. Anaya has a more than lucrative job, a studio, a vocation, a profession, and in addition, he has a long and very bright future, including, for example, hosting a booth at the Colorado Tattoo Convention and Expo on September 27, 2024.

3.    The Defendant asserts that it can be verified that he completely stopped engaging in the specific activity which resulted in his Indictment **long before** Defendant became aware that an investigation surrounding a separate individual person had peaked law enforcement's interest into the Defendant's conduct. Defendant was Indicted in early April 2024, and he was soon, thereafter, arrested. The Indictment alleged unlawful firearms transactions with Leo Castillo, exclusively. Defendant's first transaction with Leo Castillo came innocently enough: Defendant won a Play Station 5 from one of Leo Castillo's raffles long before Castillo's inventory slowly migrated to firearms. The second time Defendant saw Leo Castillo was to pick-up Denver Nuggets tickets he had won in the raffle, and the third time was for Defendant to collect Colorado Avalanche

3

USA_0283

Case No. 1:25-cv-00112-GPG-CYC   Document 21-5   filed 05/15/25   USDC Colorado
pg 13 of 26
Case No. 1:24-cr-00104-PAB   Document 30   filed 09/20/24   USDC Colorado   pg 4 of 6

tickets. Also, the Defendant's first firearm transaction involved a firearm Defendant already owned (for five months), and the conversations from there slowly evolved into the prohibited transactions at issue today.

What is absolutely crucial for the Court to know is that the Defendant's **last** transaction with Mr. Castillo occurred in January of 2023, more than a year before his Indictment. No other transactions with Leo Castillo, or any other prohibited person, or any other illegal transactions, took place involving the Defendant **after January 2023**. This means that the Defendant somehow came to terms with the illegality or immorality of his conduct, he reflected upon and self-modified his conduct – in short, Defendant stopped. This is a far cry from someone who senses immanent trouble and **only then** tries to escape responsibility by stopping. This also shows that the Defendant indeed has a conscience and that his conscience steered him onto the right path. This observation falls positively into the category that a sentence to probation would afford an adequate deterrence, 18 U.S.C. 3553(a)(2)(b), as well as "protecting the public from further harm," as it relates to 18 U.S.C. 3553(a)(2)(c). By all measure, the Defendant does not pose a risk to the community.

4.      The Defendant asserts that his conduct, his crimes, fell somewhere between *malum in se* and *malum prohibitum*, that his disposing of these firearms was criminal in nature because it is prohibited by 18 U.S.C. 922(d)(1), and, therefore, closer to *malum prohibitum*. The case for purely *malum prohibitum* would be easy to make, but for the fact that the Court is dealing, here, with firearms and not, by way of contrast, pieces of art, cell phones, or some other innocuous raffled object. Firearms have a way of garnering special attention. It was the conscious belief of the Defendant, however, that all of these firearms were furnished to legal end users through the multiple raffles, and that all of these legal end users of firearms disposed of by Defendant, to Leo Castillo, would have been able to purchase firearms directly from licensed firearms dealers after passing a background check. This is in stark contrast to a person who disposes of firearms to a prohibited person in violation of 18 U.S.C. 922(d)(1), **knowing** that the prohibited person intends to commit a crime with that firearm.

4

Case No. 1:25-cv-00112-GPG-CYC   Document 21-5   filed 05/15/25   USDC Colorado
pg 14 of 26
Case No. 1:24-cr-00104-PAB   Document 30   filed 09/20/24   USDC Colorado   pg 5 of 6

By all accounts, this raffle "enterprise" of Leo Castillo was purely a money-making venture. It seems reasonable to conclude that the raffling of firearms (and Leo Castillo, early on, raffled many other things such as computer play stations) did not have a sinister or evil underpinning associated with it.  Rather, it was Mr. Castillo's unorthodox way of earning an income.  Leo Castillo admits that he moved more than 200 firearms through his raffles in just nine or ten months, with only about 12 of those firearms being furnished by Defendant. Moreover, the firearm (any legal firearm), itself had no inherent evil or sinister component to it.  To some, a firearm it is a tool or an implement, especially in the case where the gun is not loaded firearm, as seen in the instant case.  The firearms going to the raffle simply were bigger ticket items, more compelling items fueling the raffles – thus more income to Leo Castillo than an $80.00 Xbox, for example.  The fact that any firearm could make its way into the criminal world is certainly not lost on the Defendant, but that fact is not at all what drove this operation, and that fact did not in any way drive the Defendant's conduct.  The Defendant has been a gun enthusiast for many years, long before he met Leo Castillo while applying a tattoo, and he has purchased, owned, collected, and traded numerous firearms with completely innocent intentions long before he met Leo Castillo.  Yet, Defendant does not place blame on Leo Castillo for his present situation, nor should he place blame. Defendant plead guilty because was guilty, and he would have been found guilty by a jury. These facts fall positively fall into the proposition that a sentence to probation not only reflects that seriousness of the offense, but also, it provides "just" punishment as outlined in 18 U.S.C. 3553(a)(2)(a). Defendant asserts that his conduct, while criminal, was not inherently immoral or evil, just like a firearm in not inherently immoral or evil, rather, it was then, and is now, a crime because it prohibited by law. *See,* generally, Black's Law Dictionary.  The Defendant understands that Congress had good reasons for passing these gun laws, and that it is not his place to question the rationale behind these public welfare laws.

Finally, the Defendant assert that the arresting agency, ATF, in this case has taken the position – placing this case in context with others – that the Defendant should be given a sentence of probation.

5

Case No. 1:25-cv-00112-GPG-CYC    Document 21-5    filed 05/15/25    USDC Colorado
pg 15 of 26
Case No. 1:24-cr-00104-PAB    Document 30    filed 09/20/24    USDC Colorado    pg 6 of 6

## CONCLUSION

It is not lost on anyone from the Defendant's team that this Court must engage in a delicate balancing act in order act fairly and to then achieve justice. It goes without saying that justice lies in the eye of the beholder, but here, a sentence to probation along with home detention, and/or any other options available to this Court, so as not to upend this family, truly seems to be the most appropriate option.

DATED this 20th Day of September, 2024.

Respectfully submitted,

LAW OFFICES OF RODNEY G. LOOMIS

*s/s Rodney G. Loomis*
Rodney G. Loomis
9174 E. 37th Avenue
Denver, Colorado 80238
Tel: (303) 884-8886
rloomis@ecentral.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2024, I electronically filed the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to the following email address:

Albert Buchman
United States Attorney's Office
1801 California Street, Suite 1600 Denver, Colorado 80202
all.buchman@usdoj.gov

Kurt J. Bohn
United States Attorney's Office
1801 California Street, Suite 1600 Denver, Colorado 80202
Kurt.bohn@usdoj.gov

6

USA_0286

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

In the matter of:

☐ The application for license as a/an _____ , filed by:

or

☑ License Number  5-84-005-01-6M-03814 _____ as a/an

Dealer in Firearms Other than Destructive Devices _____ , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*

The Outdoorsmans Attic, LLC
(The Outdoorsmans Attic)
2650 West Hampden Avenue
Sheridan, Colorado 80110

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed.  Based on the findings set forth in the attached document, your

   ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

      ☐ 15 calendar days after receipt of this notice, or  ☐ _____ ,

   ☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

   ☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

   ☐ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

   ☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

      ☐ 15 calendar days after receipt of this notice, or  ☐ _____

   ☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

      ☑ 15 calendar days after receipt of this notice, or  ☐ _____

   ☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

   ☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business.  If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at 950 17th Street, Suite 1800, Denver, Colorado 80202

prior to the effective date of the action set forth above.  You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor.  See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms.  Any disposition of your firearms business inventory must comply with all applicable laws and regulations.  Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

USA_0287

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 11/04/2024 | Paul W. Brown    Director, Industry Operations | *Paul W. Brown* |

I certify that, on the date below, I served the above notice on the person identified below by:

| ☑ | Certified mail to the address shown below.<br>Tracking Number: 70113500000123235274 | **Or** | ☐ | Delivering a copy of the notice to<br>the address shown below. |
|---|---|---|---|---|

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| 11/04/2024 | Director, Industry Operations | *Paul W. Brown* |
| Print Name and Title of Person Served | | Signature of Person Served |

Address Where Notice Served

Renzulli Law Firm, LLP   One North Broadway, Suite 1005  White Plains, New York 10601

Note:  Previous Edition is Obsolete

ATF Form 5300.13
Revised September 2014

USA_0288

Outdoorsmans Attic, LLC                                    ATF Form 5300.13
5-84-005-01-6M-03814                                                Page 3

In accordance with 18 U.S.C. §§ 923(e) and 923(f), as well as 27 C.F.R. §§ 478.73 and 478.74, and upon review and consideration of the entirety of the administrative record which is comprised of the statements and exhibits provided by the parties at the hearing of this matter and fully incorporated therein, I hereby make the following findings and conclusions.

Introduction

The Outdoorsmans Attic, LLC ("Licensee") holds Federal firearms license number 5-84-005-01-6M-03814 as a Dealer in Firearms other than Destructive Devices, issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") pursuant to the Gun Control Act of 1968, as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478 (collectively "GCA").

On February 20, 2024, ATF Industry Operations Investigator ("IOI") Greg Paa initiated a compliance inspection of Licensee's premises that resulted in findings of violations of the GCA.

On July 1, 2024, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500 (5300.4) ("Notice to Revoke"), advising Licensee that ATF intended to revoke his license.  Licensee timely requested a hearing on the Notice.

The hearing occurred on September 25, 2024 at ATF's Denver Field Division Office. I, Paul Brown, ATF Director, Industry Operations, Denver Field Division conducted the hearing. ATF Division Counsel Stuart Browne appeared on my behalf as Attorney for the Government. ATF IOI Greg Paa, and ATF Special Agent ("SA") Jason Clemens appeared as witnesses at the hearing. Licensee Responsible Person William Paddock attended the hearing, and was represented by Attorney Scott Allan of the Renzulli Law Firm, LLP. Court Reporter Sophie Mccuien attended and transcribed the hearing. Both the Government and Licensee had the opportunity to present evidence and statements at the hearing. The Government submitted 11 exhibits and Licensee submitted 13 exhibits. The statements and exhibits introduced at the hearing constitute the record in this proceeding.

Findings

Having reviewed the record in this proceeding, I make the following findings:

1. Licensee obtained the subject Federal firearms license in 2011.  ATF, through the testimony of IOI Paa, presented information that ATF reviewed the laws and regulations issued under the GCA with Licensee, as evidenced by Licensee responsible person William Paddock's signatures on an Acknowledgment of Federal Firearms Regulations during the 2011 application inspection and the 2018 compliance inspection. In these documents, Licensee acknowledged that it is a Federal firearms licensee's responsibility to familiarize themselves and comply with the laws and regulations.

2. On February 20, 2024, ATF IOI Paa initiated a compliance inspection of Licensee's premises.  His inspection revealed violations of the GCA.

USA_0289

Outdoorsmans Attic, LLC                                                    ATF Form 5300.13
5-84-005-01-6M-03814                                                              Page 4

3. Pursuant to the GCA, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license if the licensee has willfully violated any provision of the GCA or the regulations issued thereunder. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73.

4. For purposes of the regulatory provisions of the GCA, a "willful" violation is committed when the licensee knows of its legal obligations and purposefully disregarded or was plainly indifferent to those requirements. *CEW Properties v. DOJ,* 979 F.3d 1271 (10th Cir. 2020); *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1043 (10th Cir. 2012). "[a] single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license."

5. Violation 1 of the Notice to Revoke alleges that Licensee willfully made a false statement or representation with respect to information required by the GCA, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c).

6. IOI Paa testified that based upon information gathered by ATF SA Clemens, Licensee's records of acquisition and disposition were false as to the 15 Acquisition and Disposition Records identified in Appendix 1 of the Notice to Revoke.

7. SA Clemens testified that he became aware of Outdoorsmans Attic as part of an investigation of unlawful dealing in firearms by Leonel Castillo. The investigation revealed that Mr. Castillo was a felon who was acquiring and selling firearms, despite the fact that he was a prohibited felon. As part of the investigation into the unlawful dealing in firearms, SA Clemens spoke to Carlos Anaya, who was listed as the person from whom five firearms were acquired by the Licensee. SA Clemens testified that Carlos Anaya had stated that he had not in fact brought any of those five firearms to the Licensee.
SA Clemens also testified that he had spoken to Jorge Miranda who was listed as the person from whom 10 firearms were acquired by the Licensee. Mr. Miranda had stated that he had not in fact brought any of those 10 firearms to Licensee. In his plea agreement, Leonel Castillo admitted to dealing without a license, and in the statement of facts in the plea agreement he stated that he would bring firearms in to Outdoorsmans Attic (referred to as O.A. in the plea agreement) and another FFL in order to conduct his firearms raffles. (Licensee Exhibit 7.)

8. Mr. Paddock testified that he always checked the identification of the persons that transferred firearms to Outdoorsmans Attic, and he always transcribes that persons information into Licensee's acquisition and disposition record.

9. I credit the testimony of SA Clemens who testified that "Mr. Miranda specifically recalled on one instance where Mr. Miranda worked at his father's tire shop, one instance in which he sold Mr. Castillo several firearms. Mr. Castillo came, personally picked them up. Mr. Miranda knew that Castillo had taken them to Outdoorsmans Attic. He knows for a fact that he did not personally take those firearms to Outdoorsmans Attic." This testimony specifically relates to the February 2, 2023 transaction in the acquisition and disposition record showing acquisitions from Mr. Miranda.

USA_0290

Outdoorsmans Attic, LLC                                                                 ATF Form 5300.13
5-84-005-01-6M-03814                                                                           Page 5

10. Furthermore, SA Clemens (the witness) also testified that:

"He (Mr. Miranda) recalls specifically he had -- he had purchased several of the exact same makes and models AR in two different calibers of .556 and a 9-millimeter. He recalls specifically that he had sold several of those to Mr. Castillo and that Mr. Castillo came to his tire shop and picked them up personally."
"MR. ALLAN: And is it Mr. Miranda's position that the ten firearms that are listed on Page 1 of Government's Exhibit 11 were never brought to Outdoorsmans Attic by him personally?"
"THE WITNESS: Correct."
"MR. ALLAN: Okay. And did he advise that Leonel Castillo brought them to Outdoorsmans Attic?"
"THE WITNESS: Correct

11. Based upon the testimony and exhibits submitted, I conclude that the acquisition and disposition record had false statements concerning the acquisition of firearms. Specifically, I believe that Leonel Castillo brought firearms to Outdoorsmans Attic, and that Carlos Anaya had not brought firearms in to Outdoorsmans Attic. I also believe that Jorge Miranda had not brought in the 10 firearms that were cited in the Notice to Revoke.

12. Violation 2 of the Notice to Revoke alleges that the Licensee willfully aided and abetted a non-licensee, Leonel Castillo, to engage in the business of dealing firearms without a Federal firearms license in violation of 18 U.S.C. § 2 and 922(a)(1)(A).

13. Based upon the evidence in the record, I find that the Licensee willfully aided and abetted Leonel Castillo in unlawfully dealing in firearms without a license. Licensee responsible person William Paddock knew that Mr. Castillo was repeatedly auctioning firearms, and Licensee aided this activity by allowing the raffle winners from Mr. Castillo's firearms raffles to come in and pick up the firearms from Outdoorsmans Attic on multiple occasions. Mr. Castillo also brought firearms to Licensee for the purpose of selling them through the raffle. Licensee was aware of the raffling of the firearms, as he watched some of the raffles from his computer. Furthermore, the winners of the raffles would identify themselves as raffle winners when they picked up the firearms from Licensee. Mr. Castillo later pled guilty to dealing firearms without a license. (Licensee Exhibit 7.).

14. There were no objections to the exhibits produced at the hearing, and the exhibits in conjunction with the testimony established that the facts as alleged in the Notice to Revoke did occur. Based upon the testimony and documents submitted at the hearing, I find that the facts set forth in the Notice to Revoke for both violations 1 and 2 occurred.

Outdoorsmans Attic, LLC                                                ATF Form 5300.13
5-84-005-01-6M-03814                                                              Page 6

## CONCLUSIONS

I conclude that:

1. Licensee failed to comply with its legal obligations under the GCA as set forth in Violations 1 and 2;
2. Licensee had knowledge of its legal obligations;
3. Licensee acted with plain indifference and/or purposeful disregard as to Violations 1 and 2 and,
4. Licensee willfully violated the GCA and therefore Federal firearms license 5-84-005-01-6M-03814 is REVOKED pursuant to 18 U.S.C. § 923(e) and 27 C.F.R. § 478.74.

Dated this 4Th day of November 2024.

PAUL W. BROWN
Director, Industry Operations
Denver Field Division
Bureau of Alcohol, Tobacco, Firearms and Explosives
United States Department of Justice

USA_0292



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Washington DC*

www.atf.gov

## IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFLs) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(l)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or

- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales - whether from his/her personal firearms collection or otherwise - will be evaluated for a potential violation of 18 U.S.C. § 922(a)(l)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(l)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

CURTIS GILBERT
Digitally signed by CURTIS GILBERT
Date: 2022.04.04 16:12:22 -04'00'

Curtis Gilbert
Deputy Assistant Director (Industry Operations)
Field Operations

USA_0293

| | |
|---|---|
| **From:** | Browne, Stuart R. (ATF) |
| **To:** | Kelley, Erika (USACO) |
| **Subject:** | FW: Stay of Revocation Response--RE: [EXTERNAL] RE: Request for Extension Re the Final Notice of Revocation for Outdoorsmans Attic, LLC |
| **Date:** | Tuesday, February 25, 2025 10:49:45 AM |
| **Attachments:** | Stay Response Letter.pdf |

**From:** Brown, Paul W. (ATF) <Paul.Brown@atf.gov>
**Sent:** Friday, November 22, 2024 2:02 PM
**To:** Scott Allan <sallan@renzullilaw.com>
**Cc:** Browne, Stuart R. (ATF) <Stuart.Browne@atf.gov>
**Subject:** Stay of Revocation Response--RE: [EXTERNAL] RE: Request for Extension Re the Final Notice of Revocation for Outdoorsmans Attic, LLC

Mr. Allan,

Please see the attached letter.

Paul W. Brown
Director, Industry Operations
ATF Denver Field Division
Office: (303) 575-7600

**From:** Scott Allan <sallan@renzullilaw.com>
**Sent:** Thursday, November 21, 2024 2:13 PM
**To:** Brown, Paul W. (ATF) <Paul.Brown@atf.gov>
**Cc:** Browne, Stuart R. (ATF) <Stuart.Browne@atf.gov>
**Subject:** RE: [EXTERNAL] RE: Request for Extension Re the Final Notice of Revocation for Outdoorsmans Attic, LLC

Dear DIO Brown:

The support for the revocation in this case was entirely based on the hearsay testimony from SA Clemons regarding statements allegedly made to him by convicted felons, which was directly contradicted by the testimony of the licensee during the hearing. For that reason, we will likely be filing a petition for de novo review in federal court, and would request that Outdoorsmans be allowed to continue conducting business pending the filing of a petition.

If you are not able to provide such an extension, we would still request an extension to allow the orderly disposition of the firearms in inventory, without the ability to acquire any new firearms. Outdoorsmans currently has approximately 100 firearms in inventory, many of which are being sold on consignment, and arrangements would need to be made to return them to their owners if they cannot be sold. Doing so within the fifteen days provided is difficult, particularly with the intervening Thanksgiving holiday. In addition, there are suppressors in inventory, which will require approval to transfer, once a buyer has been located.

Thank you for your consideration of the request. If you need any additional information, please do

not hesitate to contact me.

Best regards,



...Where Clients Come First

**SCOTT ALLAN, ESQ.**
**SENIOR ASSOCIATE**

Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
P: 914-285-0700
F: 914-285-1213
sallan@renzullilaw.com
www.renzullilaw.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. To insure compliance with Treasury Regulations (31 CFR Part 10, §10.35), we inform you that any tax advice contained in this correspondence was not intended or written by us to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code. If you desire a formal opinion on a particular tax matter for the purpose of avoiding the imposition of any penalties, we will discuss the further Treasury requirements that must be met and whether it is possible to meet those requirements under the circumstances, as well as the anticipated time and additional fees involved.

**From:** Brown, Paul W. (ATF) <Paul.Brown@atf.gov>
**Sent:** Thursday, November 21, 2024 3:56 PM
**To:** Scott Allan <sallan@renzullilaw.com>
**Cc:** Browne, Stuart R. (ATF) <Stuart.Browne@atf.gov>
**Subject:** [EXTERNAL] RE: Request for Extension Re the Final Notice of Revocation for Outdoorsmans Attic, LLC

Dear Mr. Allan,

I have received the request you sent requesting a sixty-day extension of the effective date of Notice of Revocation for your client, Outdoorsmans Attic, LLC.  I will consider your request for an extension, but I will need you to provide the reason that your client needs an extension of time.  After I receive a response explaining the needed extension of time, I will consider if an extension will be granted, and for how long I will grant an extension.

Thank you,

Paul W. Brown
Director, Industry Operations
ATF Denver Field Division
Office: (303) 575-7600

**From:** Scott Allan <sallan@renzullilaw.com>

USA_0295

**Sent:** Thursday, November 21, 2024 12:27 PM
**To:** Brown, Paul W. (ATF) <Paul.Brown@atf.gov>
**Cc:** Browne, Stuart R. (ATF) <Stuart.Browne@atf.gov>
**Subject:** [EXTERNAL] Request for Extension Re the Final Notice of Revocation for Outdoorsmans Attic, LLC
**Importance:** High

Dear DIO Brown:

As you know, we represent Outdoorsmans Attic, LLC ("Outdoorsmans") with regard to the July 1, 2024 Notice to Revoke its FFL. On November 14, 2024, we received the Final Notice of Revocation dated November 4, 2024. The Final Notice of Revocation states that it is effective fifteen days from receipt, which is next Friday, November 29, 2024.

We respectfully request a sixty day extension (until January 28, 2025) of the effective date of Notice of Revocation Outdoorsmans' FFL.

Thank you for your consideration of this request. If you have any questions, please do not hesitate to contact me.

**SCOTT ALLAN, ESQ.**
**SENIOR ASSOCIATE**

*...Where Clients Come First*

Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
P: 914-285-0700
F: 914-285-1213
sallan@renzullilaw.com
www.renzullilaw.com

This email is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address. To insure compliance with Treasury Regulations (31 CFR Part 10, §10.35), we inform you that any tax advice contained in this correspondence was not intended or written by us to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code. If you desire a formal opinion on a particular tax matter for the purpose of avoiding the imposition of any penalties, we will discuss the further Treasury requirements that must be met and whether it is possible to meet those requirements under the circumstances, as well as the anticipated time and additional fees involved.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Denver Field Division*

950 17th Street/Suite 1800
Denver, CO 80202
www.atf.gov

November 22, 2024

788000:PWB
5300

Scott Allan, Esq.
Senior Associate
Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, New York 10601

RE: Federal firearms license:  5-84-005-01-6M-03814

Mr. Allan,

This letter is in response to your November 21, 2024 e-mail correspondence received requesting an extension of operations for The Outdoorsmans Attic, LLC (The Outdoorsmans Attic) concerning the revocation of the Federal firearms license.  The original revocation date was set for November 30, 2024.  In the e-mail, you indicated the stay is requested to dispose of firearms inventory, to not acquire additional firearms, provide time for National Firearms Act transfers, and allow time to file for de novo review.  You asked the revocation to be stayed for 60 days.

In consideration of your request, I will grant The Outdoorsmans Attic, LLC 30 days to continue operations through December 29, 2024.

This authorization is based upon the condition that The Outdoorsmans Attic, LLC stays in compliance with the applicable Statutes and Regulations pertaining to Federal Firearms Licensees.  If you have any questions, please feel free to contact me at 303-575-7600.

Sincerely,

Paul W. Brown
Director, Industry Operations
Denver Field Division

USA_0297